UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

David Allen Neadeau,

Defendant.

Court File No. 19-cr-145 (DWF/LIB) (1)

**REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge upon Defendant David Allen Neadeau's ("Defendant") Motion for Suppression of Evidence Obtained as a Result of Search of Vehicle. [Docket No. 23]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on July 9, 2019, regarding the parties' pretrial motions.[1]

Following the motions hearing, the parties requested the opportunity to submit supplemental briefing which was completed on August 2, 2019, and Defendant's Motion for Suppression of Evidence Obtained as a Result of Search of Vehicle, [Docket No. 23], was then taken under advisement by the undersigned on August 2, 2019.[2]

For reasons discussed herein, the Court recommends that Defendant's Motion for Suppression of Evidence Obtained as a Result of Search of Vehicle, [Docket No. 23], be **DENIED**.

[1] The Court addressed the parties' pretrial discovery motions by separate order. [Docket No. 28].
[2] At the July 9, 2019, motions hearing, Defendant withdrew parts two and three of his Motion to Suppress, which sought to suppress the seizure of Defendant's cell phone and a subsequent search of Defendant's vehicle. (July 9, 2019, Motions Hearing, Digital Recording at 11:01–11:02 a m.).

## I. BACKGROUND

Defendant is charged with one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(d)(1), 924(e)(1), and 28 U.S.C. 2461(c). (Indictment [Docket No. 1]).

## II. DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE OBTAINED AS A RESULT OF SEARCH OF VEHICLE. [DOCKET NO. 23].

Defendant moves the Court to suppress any physical evidence obtained as a result of the execution on March 13, 2019, of the state court search warrant that authorized officers to search Defendant's vehicle. (Def.'s Mem. in Supp., [Docket No. 23], at 1).

### A. Relevant Facts

On March 13, 2019, Officer Brandon Larson of the Polk County Sheriff's Department prepared an affidavit ("the Affidavit") in support of an application for a state court warrant to search Defendant's vehicle.[3] In the Affidavit, Officer Larson averred as follows:

> Deputy Olson advised Affiant that he was on routine patrol and that he came across a vehicle that was parked on the shoulder of Hwy 2. Deputy Olson investigated the parked vehicle and Affiant learned the following through Deputy Olson's Investigation.
>
> Deputy Olson exited his squad car and noticed that the Durango was running. As Deputy Olson approached the driver side window Deputy Olson noticed a male sitting in the driver seat sleeping. Deputy Olson pounded on the window and the male did not wake up. Deputy Olson pounded on the window again and the male moved a little bit. Deputy Olson then pounded on the window again and yelled Sheriff's Office. The male woke up and rubbed his face. Deputy Olson yelled Sheriff's Office again and the male started pointing in front of him. Deputy Olson advised the male to open the window and the male just rubbed his face and started falling asleep again. The male was advised Sheriff's Office and to open the window. The male then started to move around and pointed in front of him. The male started falling asleep again and Deputy Olson told him to open the window. The male kept moving around and then acted like he was going to open the window with his left hand. While the male was doing this Deputy Olson noticed that the male was slightly moving his right arm under his sweatshirt and around his waist band.

[3] Government's Exhibit 1 is the warrant application, supporting affidavit, and warrant to search Defendant's vehicle. At the motions hearing, the Government, without objection, offered the warrant application, supporting affidavit, and warrant now at issue into evidence as Government's Exhibit 1. (July 9, 2019, Motions Hearing, Digital Recording at 11:02–11:03 a m.).

Deputy Olson kept telling the male to open the window. The male seemed confused and was unable to open the window. Deputy Olson noticed that the male opened the rear driver's window a little bit. Deputy Olson asked the male if he was OK and the male said that he was. Deputy Olson then told the male to open the driver's window. While trying to open the driver's window Deputy Olson noticed that the male's right hand appeared to be slightly digging around in his waist band under his sweatshirt. After a while the male opened the window. Deputy Olson asked the male if he was OK because he kept passing out on Deputy Olson. The male said that they just pulled over. Deputy Olson noticed that the male kept yawning while speaking with Deputy Olson. Deputy Olson asked the male for his driver's license and he said he had it on him. Deputy Olson asked the male if Deputy Olson could see it and he said yes. The male then pulled out his wallet and I noticed his driver's license in one of the holders in the wallet. The male then opened the part of his wallet that holds money and pulled out what appeared to be $60. Deputy Olson advised the male that he needed his driver's license and his money. The male then put his money back into his wallet and gave Deputy Olson a MN driver license with the name David Neadeau. David advised Deputy Olson that he was coming from Red Lake. David advised Deputy Olson that he was headed to his auntie's house in North MPLS somewhere. David advised Deputy Olson that he had a couple drinks. Deputy Olson then went back to his squad car and ran David through Polk County Dispatch. David Neadeau's driving status came back valid and no wants or warrants.

Deputy Olson then went back up to the Durango and noticed that David was sleeping again. Deputy Olson asked David why he kept passing out and he said that he was tired. Deputy Olson asked David where he was going David advised Deputy Olson that he was going to his sister's house in MPLS. Deputy Olson asked David to step out of the Durango so Deputy Olson could run him through some testing to make he was OK to drive. David said that he would do some testing. Deputy Olson noticed as David was getting out of the Durango that he had to slide out of the seat. When David got out of the Durango Deputy Olson told David to walk to the front of my squad car. Deputy Olson asked David if has had any recent head injuries. David said that he has not. Deputy Olson then administered the HGN test. While doing the HGN test Deputy Olson did not notice any clues.

Walk and Turn Test

Deputy Olson asked David if he had anything wrong with his legs that kept him from walking or standing and David said that he did not. David was advised to stand with his right foot in front of his left foot heel to toe. Deputy Olson finished explaining the test to David and asked him if he understood. David said that he did. David was then advised that he could start the test. Deputy Olson noticed that David had a hard time walking heel to toe and that he needed to use his arms for balance. David also stepped [off] the line. When David finished his first nine steps he stopped and Deputy Olson asked him if he remembered what Deputy Olson told him. David then started to do the second set of 9 steps backward. While David was

walking backward Deputy Olson noticed that David need[ed] to use his arms and was stepping on the line. Deputy Olson determined that David failed the test.

One leg Stand

Deputy Olson explained and showed the one leg stand test to David. Deputy Olson then advised David that he could start the test. Deputy Olson noticed that David tried picking up his left foot but would put it down right away. David was also using his arms for balance. David then tried picking up his right foot. David was unable to pick up his right foot and was also using his arms for balance.

Modified Romberg

Deputy Olson explained the Modified Romberg test to David and he said that he understood. David then started the test. Deputy Olson noticed that David had eye tremors in both eyes. David then advised Deputy Olson that he was at 30 and Deputy Brault advised me that he stopped at 24 seconds. David advised us that he got to 30 by counting "one-one thousand, Two-one thousand" and so on.

Lack of Convergence Test.

Deputy Olson explained the Lack of Convergence test to David and he advised Deputy Olson that he under stood the test. Deputy Olson noticed that when Deputy Olson brought his finger to David's [nose] that his eyes did not converge. Deputy Olson did the test a second time and noticed the same thing.

Deputy Olson asked David when the last time was he used methamphetamine and David said that he does not use methamphetamine. Deputy Olson asked David when the last time he used marijuana and David said that he has not used marijuana in 15 years. David denied using meth or any other narcotics.

David was then placed into the back seat of Deputy Olson's squad car. Deputy Olson asked Dispatch if they could call East Grand Forks PD or State Patrol for a DRE. Dispatch advised me a short time later the East Grant Forks DRE was not available. Deputy Brault spoke with David and David said that he would give a UA but they could not search his car. Deputy Olson tried contacting his Federal Probation Officer and was unable to get a hold of her. Deputy Olson asked David if we could search his car again and David said no. Deputy Olson advised David that Deputy Olson was going to bring him to the NWRCC in the city of Crookston for a UA. David said OK.

While en route to the NWRCC Deputy Olson spoke with the MN State Patrol DRE and he advised Deputy Olson to make sure he does a PBT to rule out alcohol. He also advised me that the indicators Deputy Olson had observed were consistent with an individual coming down from a stimulant high.

> Deputy Olson and David arrived at the NWRCC and Deputy Olson advised David that he was under arrest for DWI. Davis said OK. Deputy Olson asked David for a PBT and David's PBT result was a .000 at 0345 hours. Deputy Olson then brought David to the Intox room of the jail and asked David if he would still give consent for a UA. David said that he would and signed the Polk County Consent to Search form. Deputy Olson opened the Urine BCA kit U230696 and noticed that it was intact. Deputy Olson filled out the BCA paper work and collected David's urine sample at 0355 hours. Deputy Olson tested the urine sample with a 12 panel dip test. The test showed David's urine positive for methamphetamine, amphetamine and MDMA.
>
> Affiant spoke with Stephanie Thompson who is David's Federal Probation Officer. Stephanie advised that she was driving and David had search conditions but she could not authorize a search if she wasn't here to help.

(Gov't Ex. 1).

On March 13, 2019, the Honorable Tamara Yon, Polk County District Court Judge, Ninth Judicial District, State of Minnesota, reviewed and approved Officer Larson's affidavit and application for a state court warrant to search Defendant's vehicle. (Gov't Ex. 1).

**B. Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)).

Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005); edits in Wiley). In addition, the issuing court's "'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . [concluding]' that probable cause existed." Id. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

**C. Analysis**

In the present case, the Larson Affidavit established that there was probable cause to issue the search warrant for Defendant's vehicle.

Probable cause determinations "d[o] not deal with hard certainties, but with probabilities." Gates, 462 U.S. at 231. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there

is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

To establish probable cause for the issuance of a search warrant, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." Tellez, 217 F.3d at 550 (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999) (citing United States v. Christenson, 549 F.2d 53, 57 (8th Cir. 1977)). Additionally, whether probable cause exists to support the issuance of a search warrant depends on the totality of the circumstances: "[i]n determining whether probable cause exists, we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning." United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001).

The affidavit in support of the application for the search warrant of Defendant's vehicle in this case contains statements that law enforcement encountered Defendant sleeping in his car, which was running, while it was parked on the side of the road. (Gov't Ex. 1). The affidavit also indicated that, after several attempts to wake Defendant up, law enforcement was eventually able to initiate multiple field sobriety tests and Defendant failed both the heel to toe test and the one leg stand. After being arrested, Defendant consented to a urinary analysis, which showed that his urine was positive for methamphetamine, amphetamine and MDMA. Based on the foregoing, Judge Yon had a substantial basis to conclude that there was a reasonable probability that evidence of Defendant's drug use could be found within Defendant's vehicle. See, e.g., United States v.

Lindsey, No. 14-cr-186 (PAM/JJG), 2014 WL 4293977, at *8 (D. Minn. Aug. 28, 2014) (upholding a search warrant for a defendant's vehicle where there was a fair probability that evidence of a crime would be found in the vehicle).

Furthermore, even if the Court were to find that probable cause did not exist to believe that evidence of a crime could be found in Defendant's vehicle, the Court concludes that Defendant's motion to suppress evidence gathered as a result of the search of the Defendant's vehicle should still be denied under the Leon good faith exception.

"Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing United States v. Leon, 468 U.S. 897, 922 (1984)). Even if the Court were now to conclude here that the affidavit supporting the search warrant did not set forth facts within its four corners sufficient to demonstrate probable cause to search Defendant's vehicle, on the present record, law enforcement's good-faith reliance on the warrant issued by Judge Yon militates against suppressing any evidence obtained in the search. See, Leon, 468 U.S. at 919–921 (exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope"). See also, United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed."); United States v. Rugh, 968 F.2d 750, 753 (8th Cir. 1992) ("When police objectively and reasonably believe that probable cause exists to conduct a search based on an issuing judge's determination of probable cause, evidence seized pursuant to the ultimately invalid search warrant need not be suppressed.").

Officer Larson's affidavit in support of the application for the search warrant in this case indicates that he presented Judge Yon with specific facts in support of probable cause that Defendant had been driving his vehicle while under the influence of methamphetamine, amphetamine and MDMA found to be in his system. Accordingly, when executing the search warrant for Defendant's vehicle, the executing officers reasonably relied in good faith on Judge Yon's determination that probable cause existed on the basis of the specific facts set forth in the affidavit submitted in support of the vehicle search warrant application.[4]

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion for Suppression of Evidence Obtained as a Result of Search of Vehicle, [Docket No. 23].

## III. CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Suppression of Evidence Obtained as a Result of Search of Vehicle, [Docket No. 23], be **DENIED**, as discussed above.

Dated: August 29, 2019

s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

[4] The Court also notes that, even if the search warrant did not contain sufficient probable cause, law enforcement could have lawfully searched Defendant's vehicle pursuant to the automobile exception. "The automobile exception enables an officer to seize an automobile without a warrant if they have probable cause to believe the vehicle constitutes or contains evidence of criminal activity." United States v. Linderman, No. 07-cr-359 (MJD/FLN), 2008 WL 199913, at *2 (D. Minn. Jan.22, 2008). As explained in more detail above, Defendant was arrested for suspicion of driving under the influence because he was found by law enforcement sleeping in his vehicle while it was still running. Additionally, Defendant failed multiple field sobriety tests. Thus, law enforcement would have been justified to search Defendant's vehicle without a search warrant because it was "reasonable to believe the [Defendant's] vehicle contain[ed] evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332, 351 (2009).

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.